UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                              )
                                    )       Chapter 13
RAYMOND F. ZIRTZMAN                 )
JACQUE L. ZIRTZMAN                  )       Bankruptcy No. 06-00015
                                    )
      Debtors.                      )

**ORDER RE: CONFIRMATION**

     This matter came before the undersigned on September 8, 2006 for Confirmation of Debtors' Chapter 13 Plan.  Debtors Raymond and Jacque Zirtzman were represented by attorney Brian Peters.  Carol Dunbar appeared as Chapter 13 Trustee.  After hearing arguments of counsel, the Court took the matter under advisement.  The time for filing briefs has now passed and this matter is ready for resolution.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

**STATEMENT OF THE FACTS**

     The parties entered into a factual stipulation and state that "[t]he unresolved issue for confirmation is whether the plan length is to be for three (3) years, as proposed in the Second Amended Chapter 13 Plan, or for five (5) years, as indicated on the Form B22C and 11 U.S.C. § 1322 and § 1325."

     Debtors filed their Chapter 13 case on January 17, 2006.  Their Second Amended Chapter 13 Plan provides for monthly plan payments of $300 for 36 months, plus projected disposable income.  Debtors' annualized current monthly income listed on Line 15 of Form B22C is more than the applicable median family income listed on Line 16.  Form B22C at Line 17 states the applicable commitment period is five years, or 60 months.  The parties agree plan payments of $300 per month constitutes Debtors' best effort to repay creditors.

     Debtors filed three versions of Form B22C in this case.  See Docs. 1, 37 and 44.  Line 58 on these three forms, "Monthly Disposable Income Under § 1325(b)(2)," changes from $535.18 to -$83.47 to -$162.31.  Debtors' amended Schedule J, Doc. 43, states their monthly net income is $296.27.  Trustee indicated she did not file her version of Form B22C to rebut Debtors' latest version because she and Debtors agreed to plan payments of $300 per month.

**CONCLUSIONS OF LAW**

  The relevant section of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), is 11 U.S.C. § 1325(b) which states, in pertinent part:

  (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--

. . .

  (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

. . .

  (4) For purposes of this subsection, the "applicable commitment period"--

   (A) subject to subparagraph (B), shall be--

    (i) 3 years; or

    (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--

     (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

     (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

     (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4

>   or fewer individuals, plus $525 per month for each
>   individual in excess of 4; and
>
>           (B) may be less than 3 or 5 years, whichever
>   is applicable under subparagraph (A), but only if the
>   plan provides for payment in full of all allowed
>   unsecured claims over a shorter period.

11 U.S.C. § 1325(b), (d) (2005).

The term "applicable commitment period" is a new term under BAPCPA.  Under § 1325(b)(4)(A), the definition of the "applicable commitment period" (ACP) is either three years or five years, depending on whether the "current monthly income" of the debtor is above or below the state's median family income for the same size household as the debtor.  In re Risher, 344 B.R. 833, 835 (Bankr. W.D. Ky. 2006).  If a debtor's income is below the median income for the relevant family size in the applicable state, the debtor's ACP is three years.  In re McGuire, 342 B.R. 608, 614 (Bankr. W.D. Mo. 2006) (Federman, J.).  If the debtor's income is above the applicable median income, then the debtor's ACP is five years.  Id.

As the parties have stipulated in this case, Debtors' income is above the applicable median income.  Therefore, under § 1325(b)(4)(A)(ii), the applicable commitment period is five years.  Based on the plain language of the Bankruptcy Code, the plan may not be confirmed unless it provides that all of the debtor's projected disposable income during that five-year period will be applied to make payments to unsecured creditors under the plan.

Debtors argue that there is a split of authority in the courts on the issue of whether an "above-median income" Chapter 13 debtor must make plan payments for the entire five years.  Courts have addressed the issue of whether the ACP is a "temporal" requirement or a "monetary" requirement.  See, e.g., In re Girodes, ___ B.R. ___, 2006 WL 2697239, at *3 (Bankr. M.D.N.C. Sep. 20, 2006).

>   If the ACP is a monetary requirement, the debtor's
>   disposable income must be multiplied by the ACP, which
>   would be 36 months for a below-median income debtor and
>   60 months for an above-median income debtor, to
>   determine the fixed sum that the debtor must pay during
>   the course of his plan. Under such an approach, there
>   would be no requirement that the debtor remain in the
>   plan for 36 or 60 months so long as the debtor pays the

3

> fixed sum in full. Alternatively, if the ACP is a
> temporal requirement, the debtor must devote his
> projected disposable income to payment of unsecured
> creditors over a specific period of time and may not
> exit the plan before the ACP has ended unless the
> debtor pays all unsecured creditors in full.

Id.

A vast majority of the courts addressing this issue have concluded that the "applicable commitment period" is a temporal requirement mandating that a debtor's Chapter 13 plan extend to the applicable period of three or five years. Id. at *4; In re Davis, ___ B.R. ___, 2006 WL 2391138, at *6 (Bankr. E.D. Mich. Aug. 21, 2006); In re Nevitt, 2006 WL 2433491, at *4 (Bankr. N.D. Ill. Aug. 18, 2006); In re Kagenveama, No. 05-028079-PHX-CGC, slip op. at 4-5 (Bankr. D. Ariz. July 10, 2006); In re Alexander, 344 B.R. 742, 751 (Bankr. E.D.N.C. 2006); In re Dew, 344 B.R. 655, 661 (Bankr. N.D. Ala. 2006); In re McGuire, 342 B.R. 608, 615 (Bankr. W.D. Mo. 2006) (Federman, J.); In re Schanuth, 342 B.R. 601, 607-08 (Bankr. W.D. Mo. 2006) (Venters, J.); In re Cushman, ___ B.R. ___, 2006 WL 2529575, at *6 (Bankr. D.S.D. Apr. 6, 2006). The court in In re Beasley, 342 B.R. 280, 284 (Bankr. C.D. Ill. 2006) stated that, applying the plain meaning of the statute, the calculations from Form B22C determining whether debtors' income is above or below the applicable median amount are fully determinative of the ACP.

In the case of In re Fuger, 347 B.R. 94, 97 (Bankr. D. Utah 2006), the court found the term "applicable commitment period" ambiguous when considered in the context of § 1325(b)(1)(B). It concluded that it is both a monetary and a temporal provision.

> It is monetary in the sense that it has always required
> debtors to commit to pay unsecured creditors a set
> return. It is temporal in the sense that it has always
> required debtors to determine that return by projecting
> over a specific time period, and it provides debtors
> with a time limit for performing under a chapter 13
> plan.

Id. The court held that it makes little sense to hold the debtor hostage for 60 months where the debtor can satisfy the requirements of § 1325(b)(1)(B) in a shorter period, so long as their projected disposable income is computed over that length of time. Id. at 101-02. Certain commentators have also reached this conclusion. See Keith M. Lundin, Chapter 13 Bankruptcy §§ 493.1 and 500.1 (3d ed. 2000 & Supp. 2006); Unintended

4

<u>Consequences: BAPCPA and the New Disposable Income Test</u>, 25-MAR Am. Bankr. Inst. J. 16 (March 2006).

In <u>Kagenveama</u>, the court notes that the ACP is fundamentally irrelevant in cases where there are no required payments to unsecured creditors because projected disposable income is less than zero. Slip op. at 5.

> Section 1325(b)(1)(B) mandates a period of not less than five years for the required payments to unsecured creditors and Section 1322(d) provides that for an above median debtor, the plan duration must be not more than five years. Because, in this case, there are no required payments to unsecured creditors (projected disposable income being less than zero), the plan duration will be determined by other mandated payments such as those to secured creditors, priority creditors, administrative creditors and any chapter 7 reconciliation amount. It may be less, but it may not be more, than five years.

<u>Id.</u>  The ACP "simply does not come into play where no projected disposable income must be taken into account." <u>Alexander</u>, 344 B.R. 751. The rationale is that there is no reason to extend plans artificially if there is no requirement that debtors pay a dividend to unsecured creditors over time.  <u>Id.</u>

In <u>Fuger</u>, the debtors' Statement of Current Monthly Income resulted in a negative number, although the debtors proposed to pay a total of $500 to unsecured creditors. 347 B.R. at 102 n.35. The court noted that if the trustee presented evidence to rebut the presumption that the debtor's projected disposable income was less than zero, it would require the debtors to pay unsecured creditors their monthly disposable income multiplied by 60 months.  <u>Id.</u>

**ANALYSIS**

In this case, Debtors' most recent version of Form B22C shows disposable income of less than zero. The parties, however, have agreed that Debtors will make plan payments of $300 per month. This agreement rebuts the presumption from Form B22C, Line 58 that there is no requirement that Debtors pay a dividend to unsecured creditors. Indeed, Debtors' Second Amended Chapter 13 Plan proposes to pay unsecured creditors $2,768.18 over 36 months.

Based on the foregoing law, the Court concludes that Debtors' plan may not be confirmed unless Debtors pay their projected disposable income over five years.  Debtors assert in their Plan that there is no projected disposable income according to their Statement of Current Monthly Income, Form B22C.  In these circumstances, however, because Debtors and Trustee agree that Debtors have monthly net income of $300 to pay into the plan, this amount is their projected disposable income under § 1325(b)(1)(B).  Because the duration of Debtors' plan is 36 months, rather than 60 months, it cannot be confirmed.

In this case, it is not necessary for this Court to choose between whether the "applicable commitment period" is a temporal versus a monetary requirement.  Debtors' plan is not confirmable, regardless of which interpretation is correct.

**WHEREFORE**, confirmation of Debtors' Second Amended Chapter 13 Plan is DENIED.

**FURTHER**, because Debtors' income is above the applicable median income, the plan length must be five years under § 1325(b)(1)(B).

DATED AND ENTERED: October 4, 2006

_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE